IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YANNE PALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-1454 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 26th day of March, 2014, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 12) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending application[1] for benefits on July 19, 2011, alleging a disability onset date of September 9, 2008, due to post-traumatic stress disorder and attention deficit disorder, as well as a number of physical impairments. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on September 16, 2011, at which plaintiff, represented by counsel, appeared and testified. On March 20, 2012, the ALJ issued a decision finding that plaintiff is not disabled. On August 17, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 31 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c). He has at least a high school education and honorably served in the United States Marine Corps. Plaintiff has past relevant work experience as a security officer and a loss prevention officer, but has not performed any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that while plaintiff suffers from the severe impairments of post-traumatic stress disorder, attention deficit disorder and a history of drug and alcohol abuse, in remission,[2] the medical evidence does not show that plaintiff's impairments, alone or in combination, meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act through September 31, 2013. (R. 15).

[2] The ALJ found that plaintiff's physical impairments do not significantly limit his ability to perform work related activities and therefore are non-severe. (R. 15).

AO 72
(Rev. 8/82)

The ALJ further found that plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels but with numerous restrictions accounting for the limiting effects of his mental impairments.[3] A vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including vehicle cleaner, janitor and night cleaner. Relying on the vocational expert's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[4] 20 C.F.R. §404.1520.

---

[3] Specifically, plaintiff is limited to: simple, repetitive tasks that are performed using routine work processes in a routine work setting; low work stress, defined as work that involves no high production quotas or close attention to quality production standards; he may not engage in teamwork; and, he is limited to no more than incidental interaction with members of the general public. (R. 17).

[4] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §404.1520a.

If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff asserts that the ALJ's decision is not supported by substantial evidence for a number of reasons: (1) the ALJ improperly evaluated the medical evidence; (2) the ALJ erred by not finding plaintiff disabled at step 3; (3) the ALJ improperly evaluated plaintiff's credibility; and, (4) the ALJ erred at step 5 by relying on the vocational expert's response to an incomplete hypothetical. Upon review, this court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly evaluated the medical evidence. Under the Social Security Regulations, an ALJ is to evaluate every medical opinion received, regardless of its source, and is required to consider numerous factors in deciding the weight to which each opinion is entitled, taking into account numerous factors including the opinion's supportability, consistency and specialization. 20 C.F.R. §404.1527(d). Importantly, the opinion of any physician on the issue of what an individual's residual functional capacity is or on the ultimate determination of disability never is entitled to special significance. 20 C.F.R. §404.1527(e); SSR 96-5p.

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. His decision makes clear that he considered all of the relevant evidence from all medical sources and provided a detailed analysis of that evidence, setting forth sufficient explanations as to why he rejected or discounted any such evidence. (R. 18). The court is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff raises numerous specific challenges to the ALJ's evaluation of the medical evidence which the court now will address. First, he takes issue with the following statement in the ALJ's decision relating to plaintiff's July 2009 psychiatric evaluation: "I have assigned a global

assessment of functioning (GAF) score of 59, indicative of only minor symptoms." (R. 19). Plaintiff argues that this statement is erroneous and amounts to the ALJ substituting his own opinion for the medical evidence. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(ALJ may not make speculative inferences from medical reports and may not substitute his own lay opinion for those from qualified medical professionals).

The court is satisfied that the foregoing statement is nothing more than harmless error. Although the ALJ does state "*I* have assigned a GAF score of 59 ...", the evaluation to which the ALJ is referring reports that plaintiff's then-current GAF score[5] was 59, indicating that it was not the ALJ but Dr. Howard Steinberg, the author of the report, who assigned plaintiff that score. (R. 279). Moreover, although the ALJ erroneously states that a GAF score of 59 is "indicative of only minor symptoms" when such a score actually indicates "moderate" symptoms,[6] plaintiff does not explain how this isolated misstatement alters in any way the ALJ's findings as to plaintiff's residual functional capacity or the ultimate determination that plaintiff is not disabled. Accordingly, the ALJ's misstatement is deemed harmless. See Fraser v. Astrue, 373 Fed.Appx. 222, 225 (3d Cir. 2010)(erroneous reference in decision harmless where it did not undermine substantial evidence upon which ALJ's opinion rested).

Plaintiff also argues that the ALJ failed to analyze the impact of plaintiff's fluctuating GAF scores on his ability to "participate meaningfully in the competitive workforce." This argument is belied by the record. Although the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have any direct correlation to the disability requirements

---

[5] The global assessment of functioning ("GAF") score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994).

[6] A GAF rating of 51 to 60 indicates "moderate" symptoms or "moderate" difficulty in social or occupational functioning. Id.

AO 72
(Rev. 8/82)

and standards of the Act, See 65 Fed.Reg. 50746, 50764-65 (2000), as with any other clinical findings contained in narrative reports of medical sources, the ALJ nevertheless is to consider and weigh those findings under the standards set forth in the regulations for evaluating medical opinion evidence. 20 C.F.R. §404.1527(d).

It is clear from the ALJ's decision that he properly did so here. In analyzing the medical evidence, the ALJ acknowledged numerous GAF scores and considered them in the context of the various reports in which they were assigned and weighing them in light of all of the medical evidence of record. (R. 19). Accordingly, the court finds no error in the ALJ's analysis of this evidence.

Plaintiff next suggests that the ALJ's determination that plaintiff is not entitled to benefits under the Act was unduly influenced by the fact that the Veterans Administration only found plaintiff to be 70% disabled under its regulatory scheme. The court finds nothing in the record to support this accusation.

As plaintiff correctly notes, the Commissioner is to make disability determinations based on social security law, and a determination from another agency relating to disability is not binding on the issue of disability under the social security regulations. See 20 C.F.R. §404.1504. Nevertheless, the Commissioner is "required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies." SSR 06-03p; 20 C.F.R. §404.1512(b)(5). Accordingly, while not binding, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." SSR 06-03p.

In this case, in examining the documentary evidence, the ALJ merely noted that "[plaintiff] has a 70% disability rating from the Department of Veterans Affairs." (R. 19). However, merely

acknowledging that rating in no way suggests that the ALJ found it binding nor that he gave it more weight than it otherwise was due. Instead, the ALJ properly considered it, along with the other evidence in the case record, as required under SSR 06-03p, and plaintiff's contention that the ALJ was improperly swayed by it, or inappropriately "extrapolated" the VA's determination onto plaintiff's social security application, is unsupported by the record.[7]

Plaintiff also challenges the ALJ's evaluation of the medical evidence at step 3 of the sequential evaluation process. Specifically, plaintiff alleges that the ALJ improperly rejected the opinion of plaintiff's treating psychologist, Mary Niebauer, Ph.D., who opined that plaintiff meets the requirements of Listing 12.06, and instead chose to give greater weight to the opinion of Richard A. Heil, Ph.D., a non-examining state agency reviewing psychologist. The court finds no error in the ALJ's analysis of the medical evidence at step 3.

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §404.1520(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

---

[7] In support of his argument, plaintiff points only to the ALJ's statement that "I observe that in January 2012, [plaintiff's] treating psychiatrist indicated that he did not believe [plaintiff] is 100% disabled." (R. 19). Plaintiff argues that the treating psychiatrist's statement merely indicated that plaintiff was not 100% disabled under the VA standards, and that the ALJ improperly relied upon that finding in determining that plaintiff is not disabled under the social security regulations. However, it is clear to the court that the ALJ did not view the treating psychiatrist's statement as "binding" but was merely considering it, along with all of the other evidence in the record, in determining whether plaintiff is disabled under the Act, which not only was proper but is required under SSR 06-03p.

The ALJ has the burden to identify the relevant listed impairment that compares with the claimant's impairment and must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id. at 120, n.2. However, the burden is on the claimant to present medical findings that show that his impairment matches or is equal in severity to a listed impairment. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, as required, the ALJ properly identified Listing 12.06 as the relevant listing that compares with plaintiff's mental impairments[8] and thoroughly explained why those impairments, alone or in combination with plaintiff's other impairments, do not meet or equal that listing. (R. 16-17); see Burnett, 220 F.3d at 120, n.2. In particular, the ALJ determined that plaintiff failed to meet either the "B" or "C" criteria of Listing 12.06.[9] Because Listing 12.06 provides that the "required level of severity for these disorders is met [only] when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied," (emphasis added), the ALJ concluded that plaintiff does not meet the listing.

Plaintiff, however, argues that the ALJ improperly rejected the opinion of Dr. Niebauer, who opined that plaintiff does meet the requirements of Listing 12.06. (R. 617), and that, as the opinion of a treating source, Dr. Niebauer's opinion was entitled to significant, if not controlling,

---

[8] The ALJ also found that plaintiff's mental impairments do not meet Listings 12.04 or 12.09, and plaintiff has not challenged the ALJ's findings as to any other Listing. Accordingly, this court's analysis focuses solely on whether there is substantial evidence to support the ALJ's finding that plaintiff does not meet Listing 12.06.

[9] The "B" criteria under 12.06 provide that the mental impairment must result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 12.06B (emphasis added). Here, the ALJ found that plaintiff has mild limitations in activities of daily living; moderate limitations in both social functioning and concentration, persistence or pace; and, that he has experienced no episodes of decompensation of extended duration. (R. 16-17).

weight.[10] This argument is without merit.

Here, the ALJ expressly considered Dr. Niebauer's opinion that plaintiff meets Listing 12.06 but rejected that opinion because she "failed to specify how [plaintiff] met the listing." (R. 19). There is no error in this conclusion. Dr. Niebauer's "opinion" that plaintiff meets Listing 12.06 consists solely of her circling the word "does" in a form that simply lists the requirements of Listing 12.06. There is no explanation as to how plaintiff meets the listing. In fact, although the form lists the requirements of the "A","B" and "C" criteria of that listing, Dr. Niebauer did not indicate in any way which of those requirements plaintiff purportedly meets. Accordingly, the court finds no error in the ALJ rejecting her opinion that plaintiff meets Listing 12.06.

Plaintiff argues to this court that the ALJ should have read Dr. Niebauer's opinion in conjunction with the accompanying "medical opinion re: ability to do work-related activities" that she also submitted on March 12, 2012, (R. 619), and that, read together, the two documents establish that plaintiff has marked[11] limitations in the areas of social functioning and concentration, persistence and pace under the B criteria of Listing 12.06. The court finds this contention to be without merit.

---

[10] Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §404.1527(d)(2); Fargnoli, 247 F.3d at 33. Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §404.1527(d).

[11] Where "marked" is used as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. 12.00C. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, so long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively and on a sustained basis." Id.

The accompanying medical opinion relating to plaintiff's ability to do work-related mental activities upon which plaintiff now relies is in essence a residual functional capacity assessment that addresses plaintiff's ability to perform more specific work-related mental activities[12] rather than the broad categories found in the B criteria of Listing 12.06, and there is no medical evidence in the record from any treating or non-treating source suggesting that plaintiff has marked or extreme limitations in any of the broad categories necessary to meet those criteria. Accordingly, even if accepted, the residual functional capacity assessment of Dr. Niebauer would not support a finding of disabled at step 3 of the sequential evaluation process.

Beyond Dr. Niebauer's properly rejected opinion, there is no other medical evidence in the record to support a finding that plaintiff has marked or extreme limitations in any area of functioning. Conversely, the state agency reviewing psychologist, Dr. Heil, found only moderate difficulties in social functioning and concentration, persistence and pace in concluding that plaintiff does not meet Listing 12.06. (R. 60). Although plaintiff argues that the ALJ improperly gave more credence to this report than that of Dr. Niebauer, pursuant to the Regulations, state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §404.1527(f)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §404.1527(f)(2)(ii); SSR 96-6p. The ALJ did so here and, having concluded that Dr. Heil's report

---

[12] A mental residual functional capacity assessment is used at steps 4 and 5 and "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B ...." (Id.) Thus, "[a]n assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental disorder." 20 C.F.R., Part 404, Subpart P, Appendix 1, 12.00A. (emphasis added).

was "well supported and consistent with other substantial evidence," he properly gave that opinion "great weight." (R. 19).

In sum, the ALJ did a thorough job in his decision in setting forth the relevant medical evidence and explaining why he rejected or discounted any evidence. The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff next contends that the ALJ's credibility determination is not supported by substantial evidence. Specifically, plaintiff argues that in assessing credibility, the ALJ failed to adequately take into account plaintiff's exemplary record as a United States Marine. This argument is without merit.

It is well-settled that a claimant's allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §404.1529(c), and that an ALJ may reject a claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); see also SSR 96-7p.

Here, the ALJ clearly was aware of plaintiff's distinguished military record and explicitly acknowledged plaintiff's "distinguished service as a member of the United States Marine Corps during Operation Iraqi Freedom," along with referencing plaintiff's military records contained in Exhibits 13E and 14E. (R. 18-19). In addition, the ALJ discussed it with plaintiff at the hearing. (R. 33-34). However, in assessing plaintiff's credibility the ALJ considered the record as a whole, and, based on his review of all of the evidence, properly concluded that the medical evidence does not support plaintiff's subjective allegations of totally debilitating pain. The ALJ did a thorough job in his decision explaining why plaintiff's allegations of disabling subjective symptoms are not

AO 72
(Rev. 8/82)

supported by the record, in particular by the objective medical findings or by plaintiff's self-reported activities of daily living. (R. 17-19). Accordingly, plaintiff's distinguished military service in and of itself is insufficient to overcome the objective evidence refuting plaintiff's allegations of debilitating limitations.

It also is important to note that the ALJ did not find plaintiff's subjective complaints <u>entirely</u> not credible. Rather, his decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from his impairments are supported by the medical and other evidence, those limitations were accommodated in the residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

The record demonstrates that the ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence and the court is satisfied that it is.

Plaintiff's final argument is that the ALJ's residual functional capacity finding and resultant hypothetical to the vocational expert were incomplete because the ALJ failed to include a limitation regarding plaintiff's ability to interact with supervisors. However, it is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence. (R. 17-20). The court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence as outlined in the decision.

Nor did the ALJ err in relying upon the vocational expert's response incorporating only those limitations set forth in his residual functional capacity finding. A hypothetical to the

AO 72
(Rev. 8/82)

- 12 -

vocational expert must reflect all of the claimant's impairments and limitations supported by the record. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984). Here, the ALJ properly relied upon the vocational expert's response to a hypothetical which accounted for all of plaintiff's impairments and limitations supported by the record, and the vocational expert's testimony in response to that hypothetical constitutes substantial evidence supporting the ALJ's finding that plaintiff retains the ability to perform work existing in significant numbers in the national economy and therefore is not disabled within the meaning of the Act.

Moreover, the more restrictive limitations advanced by plaintiff, including the purported inability to interact appropriately with supervisors, were not supported by the objective medical evidence, but only by plaintiff's subjective testimony, which, as already discussed, the ALJ properly found to be not entirely credible. As a hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record, the ALJ did not err in rejecting a response to a hypothetical incorporating limitations not supported by the medical evidence. See Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004) (ALJ has authority to disregard vocational expert's response to hypothetical inconsistent with evidence).

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

_/s/ Gustave Diamond_
Gustave Diamond
United States District Judge

AO 72
(Rev. 8/82)

cc: Glenn S. Sinko, Esq.
Sinko Zimmerman, LLC
Suite 120 One Adams Place
300 Seven Fields Blvd.
Seven Fields, PA 16046

Colin Callahan
Assistant United States Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)